**STARLIGHT SUGAR INC., Pan American Grain Mfg. Co., Inc., Plaintiffs,**

v.

**Neftali SOTO, Individually and as Secretary of the Department of Agriculture of the Commonwealth of Puerto Rico, Defendant.**

Civ. No. 95–2078(PG).

United States District Court, D. Puerto Rico.

Oct. 24, 1995.

Antonio Moreda, San Juan, PR, Marcos Ramírez–Lavandero & Eduardo A. Vera–Ramírez, Old San Juan, PR, for plaintiffs.

Eric Tulla & Guillermo Ramos Luiña, Hato Rey, PR, Mayra Maldonado & Anita Hill–Adames, Dept. of Justice, San Juan, PR, for defendant.

## *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

### I. Introduction

■ Before the Court is a motion by the Sugar Corporation of Puerto Rico,[1] joined by the above named defendant, seeking to disqualify attorney Antonio Moreda ("Moreda") from his role as plaintiff's counsel in this suit. The Sugar Corporation alleges that Moreda's representation in this case violates Rules 1.9 and 1.10 of the Model Rules of Professional

---

1. The Sugar Corporation is a public corporation, but with a separate and distinct legal personality apart from the Government of Puerto Rico. *Sugar Corporation of Puerto Rico v. Environeering. Inc.*, 520 F.Supp. 996, 998–99 (D.P.R.1981) (citing P.R.Laws Ann. tit. 28, § 242(c)). The Sugar Corporation's "primary purpose" is the achievement of "Puerto Rico's public policy in relation to the sugar industry." *See* Motion for Rehearing filed by the Sugar Corporation on October 6, 1995, Dkt. # 20. The Sugar Corporation arranges the distribution of Puerto Rico-produced sugar to the island's consumers. It is subject to all the Commonwealth's regulations of the sugar industry, including the one at issue in this case. *Id.*

Conduct.[2] The Sugar Corporation alleges: (1) that Moreda previously represented it in "substantially related" litigation, and (2) that the interests of the Sugar Corporation are "materially adverse" to those of Moreda's present client.

For the reasons stated herein, I find that the ethical principles embodied in the Rules of Professional Conduct do not require Moreda's disqualification. The Sugar Corporation's motion is therefore denied. Attorney Moreda may continue to represent his clients in this case.

## II. Factual Background

This case involves a U.S. constitutional challenge to "Regulation 13" of the Puerto Rico Department of Agriculture. Regulation 13 governs the importation and marketing of sugar in Puerto Rico. In 1984, Regulation 13 was amended to essentially prohibit the importation of sugar to the Island for repackaging in two and five pound bags for subsequent consumer sales. Such importation is now only permissible if it can be demonstrated that Puerto Rican-produced supplies are or will be insufficient to meet consumer demand. Even then, approval must be granted by the Secretary of the Department of Agriculture ("Secretary"). Prior to 1984, the repackaging business was a perfectly legal enterprise. See García v. Bauzá Salas, 686 F.Supp. 965, 966 (D.P.R.) (rev'd for violating the Anti–Injunction Act, 862 F.2d 905 (1st Cir.1988)).

In 1985, several suits were commenced in the Commonwealth Superior Courts involving the-then newly amended Regulation 13. In the first, a sugar distributor in the importation-repackaging business ("García") sued the Commonwealth of Puerto Rico and the Secretary in the Mayaguez Superior Court to enjoin them from enforcing Regulation 13. García alleged that application of Regulation 13 violated his rights under the Puerto Rico constitution. No federal constitutional claims were raised. Bauzá Salas, 686 F.Supp. at 966.

While the Mayaguez suit was pending, the Sugar Corporation, filed suit against García in the Ponce Superior Court. The firm of Moreda, Moreda and Arillaga represented the Sugar Corporation in the Ponce case. Attorney Moreda was a member of the firm, consisting of Moreda, his father ("Moreda Sr."), and another attorney.

The Ponce suit alleged that García had engaged in unfair business practices, trademark infringement, and sought to compel García to comply with Regulation 13. García defended the business practices and trademark infringement claims on their merits. With regard to Regulation 13, García asserted as an affirmative defense the same arguments of unconstitutionality he made as a plaintiff in the Mayaguez case. Id.

Documents filed in conjunction with the instant motion demonstrate that, as part of the 1985 litigation, Moreda drafted a memorandum addressing the trademark aspects of the Ponce case. Moreda also concedes that he attended several meetings with Sugar Corporation officials regarding the case. Nonetheless, Moreda asserts that his father was the principal attorney in the case, and that his participation was limited to the issue of trademark infringement. In Moreda's affidavit, he proffers that he received no confidential information during his prior representation of the Sugar Corporation that would assist him in the current suit. See Sworn Statement of Antonio Moreda Toledo (exhibit X of plaintiff's motion in opposition). Moreda Sr. concurs. See Sworn Statement of Manuel A. Moreda (exhibit IX of plaintiff's motion in opposition). Both Moredas attest that there have been no communications between them regarding the instant case.

In the fall of 1985, decisions were reached in both the Mayaguez and Ponce suits. The Mayaguez court held for García, finding that application of Regulation 13 to him violated the Puerto Rico constitution. The Ponce court, however, found for the Sugar Corporation. The appeals were consolidated in the Puerto Rico Supreme Court, where the propriety of Regulation 13 was affirmed. Bauzá

---

**2.** The ABA's Model Rules have been incorporated into this District's Local Rules. See Appendix II of the Local Rules of the United States District Court for the District of Puerto Rico (1994 Butterworth de Puerto Rico).

*Salas,* 686 F.Supp. at 966. The Moreda firm did not participate in this appeal. Moreda maintains that he has not had any professional dealings with the Sugar Corporation since the 1985 suit.

In the present case, Moreda is again involved in a suit arising from the importation and subsequent repackaging of sugar. He represents clients who have been denied by the Secretary the necessary permits to do so. On this occasion, however, Moreda argues that Regulation 13, on its face and as applied to plaintiffs, violates the U.S. Constitution. On behalf of his clients, Moreda seeks a preliminary injunction and damages. Thus, the position that Moreda advocates here is undeniably different from the one he argued ten years ago. The question, however, is whether his representation of plaintiffs in this case violates his ethical obligation to the Sugar Corporation, his former client.

■■■ It is important to note that the Sugar Corporation is not a party to this case.[3] Its motion to intervene under Fed. R.Civ.P. 24(a)(2) and 24(b)(2) two days after the hearing began was denied on the grounds that the Secretary's presence in this case adequately represented the Sugar Corporation's interests. Though the Sugar Corporation has standing to bring this motion, its absence as a party dictates a closer analysis of how its interests are affected by Moreda's representation of plaintiffs than might otherwise be required.

### III. An Attorney's Obligation Under Rules 1.9 and 1.10

Rule 1.9(a) sets the following limits on a lawyer's ability to represent a client whose interests conflict with those of a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless

the former client consents after consultation.

Rule 1.10 provides for the imputed disqualification of an attorney, such that if one member of a firm is disqualified from a case, his colleagues in the firm are likewise disqualified.

■■■ The rules are primarily concerned with preventing confidential information obtained in the former representation from being used in the subsequent litigation. *Kevlik,* 724 F.2d at 850–51. Other interests, however, such as an attorney's duty of loyalty, are also advanced by the prohibitions of rules 1.9 and 1.10. *In re Agent Orange Product Liability Litigation,* 800 F.2d 14, 18 (2d Cir.1986).

■■■ The First Circuit has reaffirmed the "substantially related" test as governing the inquiry into whether disqualification is appropriate in attorney conflict of interest cases. *Borges v. Our Lady of the Sea Corp.,* 935 F.2d 436, 439 (1st Cir.1991). The test, however, is not self-executing. Judge Weinfeld, in the classic case of *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953), coined the term "substantially related" as it applies to considerations of attorney conflicts, and the term has since been incorporated into Model Rule 1.9. It is therefore difficult to apply the substantial relationship "test" when the term is used to define the very conduct the rule prohibits. This Court continues to view the "substantially related" test as not so much a rule of substantive law, but as a measure of the quantum of evidence required for proof of the professional obligation. *See Estrada v. Cabrera,* 632 F.Supp. 1174, 1176 (D.P.R. 1986).

■■■ The following approach is useful in determining whether matters are "substantially related." First, the court reconstructs the scope of the facts involved in the former representation and projects the scope of the facts that will be involved in the second representation. Second, the court assumes

---

**3.** It nonetheless has standing to bring this motion because of its prior relationship with attorney Moreda. *See Kevlik v. Goldstein,* 724 F.2d 844, 847–48 (1st Cir.1984). Whatever doubt there

may be about the Sugar Corporation's standing is mooted by the defendant's joining the motion. *Id.*

that the lawyer obtained confidential client information about all facts within the scope of the former representation. Third, the court determines whether any aspect of the former representation is so similar to any material matter in the latter representation that a lawyer would consider it useful in advancing the interests of the client in the latter representation. *See* Charles W. Wolfram, *Modern Legal Ethics* § 7.4 at 370 (Practitioner's Ed.1986).

 The moving party bears the burden in a motion to disqualify. *Estrada,* 632 F.Supp. at 1175, *Agent Orange Litigation,* 800 F.2d at 19. Thus, the moving party must allege the type and nature of the confidences that were exchanged in the prior litigation that should subsequently disqualify the attorney in the latter representation. This does not mean that the Court will actually examine the confidential information—to do so would result in the confidentiality of the information being lost in the very process of attempting to protect it. However, the mere *allegation* that confidential information was exchanged in a prior representation will not suffice to create the "irrebuttable presumption" of shared confidences that is so frequently spoken of in this area of the law.

### IV. Discussion

 The Sugar Corporation argues that the matters at issue here and in the prior litigation are "substantially related" because, in different forums, at different times, representing different clients, Moreda advocated both for and against the validity of Regulation 13. Likewise, the Sugar Corporation argues that the "material adversity" requirement of Rule 1.9 is met because, if Moreda should win, the Sugar Corporation's interests will be hurt.

 These allegations, in the context of this case, can not sustain the Sugar Corporation's motion to disqualify Moreda. Ten years ago, the Moreda firm sought to force distributors of sugar on the Island to comply with the regulation. Today, Moreda argues that Regulation 13 is unconstitutional. The

Sugar Corporation would certainly not be pleased with the outcome Moreda seeks today, but the representation "conflicts" with the 1985 litigation in only the most superficial sense. As the Federal Circuit has stated, "attorneys represent *clients*—not legal positions."[4] *Telectronics Proprietary, Ltd. v. Medtronic,* 836 F.2d 1332, 1338 (Fed.Cir. 1988) (emphasis in original). A more particularized inquiry than the one suggested by the Sugar Corporation is required.

The first step is to reconstruct the scope of the facts involved in the former representation. In the Ponce suit, Moreda represented the Sugar Corporation in its efforts, *inter alia,* to bring Puerto Rico's distributors into compliance with Regulation 13. The suit also alleged trademark infringement, and unfair business practices. The Moreda firm also, presumably, responded to García's allegation that Regulation 13 violated the Puerto Rico constitution.

Assuming for the time being that Moreda was actively involved in all aspects of this suit, without more, I do not see why he should be disqualified. The primary issue in the current case is whether Regulation 13 violates the Commerce Clause of the United States Constitution. Plaintiffs also challenge the Secretary's implementation of Regulation 13 on Equal Protection and Due Process grounds, in addition to making a Fifth Amendment "Takings" argument.

It is unclear how the issues addressed in the prior litigation could be beneficial to Moreda in conducting these constitutional challenges. All the disputed matters in the prior litigation involved the particularized conduct of particular business concerns at a particular time. In the suit currently before the Court, the soundness of the Commonwealth's agricultural policy *vis a vis* the sugar industry is in dispute.

In adjudicating the Commerce Clause challenge, for example, the Court must assess the purposes and effects of a state's regulation of inter-state commerce. *See, e.g., Minnesota v. Clover Leaf Creamery,* 449

---

4. For example, an attorney who argues for joint and several liability in one setting may argue against it another. No one would argue that the attorney has a conflict. This hypothetical is not so very different from the situation currently before the Court.

U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). This analysis will not involve any consideration of the business issues raised in the prior suit.

Similarly, the Puerto Rico constitutional issues litigated ten years ago bear only a superficial relation to those in dispute today. The instant plaintiffs seek to enter the market, while those of ten years ago had just been expelled from it. Plaintiffs today challenge the conduct and policy of a government actor, while ten years ago the Sugar Corporation sought to force sugar distributors to comply with the newly established government policy. The litigants in the two suits thus occupy starkly different legal and factual positions. All these differences suggest that the matters are not "substantially related," as that term is meant in Rule 1.9.

Several other factors contribute to my decision not to disqualify attorney Moreda. None of them, independently, is decisive. Their cumulative effect, however, in conjunction with the above analysis, tilts the balance against the Sugar Corporation's efforts to disqualify attorney Moreda. *See Kevlik*, 724 F.2d at 850 (describing the analysis in an attorney conflict decision as balancing the client's right to the counsel of his choosing, and the Court's responsibility to assure that attorneys comply with their ethical obligations).

The first consideration is the motion's timing. Moreda has represented the plaintiffs in various transactions before the Secretary and with the Sugar Corporation since *at least* June 1993. He has represented the plaintiffs in other capacities since well before then. This suit was filed on August 28, 1995. The Sugar Corporation sought (unsuccessfully) to intervene on October 3, 1995, the third day of the preliminary injunction hearing. The Sugar Corporation did not file its motion to disqualify attorney Moreda until October 9, 1995, nearly a week later.

▮▮▮▮ It is true that a former client never waives his right to invoke the protections provided by Rule 1.9. *See Kevlik*, 724 F.2d at 848. It is also true that the "right" to counsel of one's choosing is less compelling in civil matters. *Id.* at 850. The *Kevlik* court also noted approvingly, however, that the motion to disqualify in that case was brought *prior* to trial, implying that such fact may be a consideration in ruling on the timeliness of a motion to disqualify counsel.

Here, as noted, the Sugar Corporation sought to disqualify attorney Moreda more than a week after the hearing had begun, after its motion to intervene was denied. Given these facts, it is difficult to ignore the tactical considerations that may underlie the Sugar Corporation's decision to seek to disqualify Moreda at this time. *See Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1113–20 (D.N.J.1993).

The second factor I have considered in ruling not to disqualify Moreda is the time that has lapsed since he represented the Sugar Corporation. The Ponce case concluded in November 1985. It is now October 1995. Although Moreda does not allege that circumstances have substantially changed in the intervening ten years, the passage of time has inevitably diluted whatever advantage his prior representation of the Sugar Corporation might have given him here.

▮▮▮▮ The third factor I have considered are the affidavits filed by both Moreda and his father. I would ordinarily reject out of hand a lawyer's claims that he did not use confidential information obtained in a prior case. Here, however, in light of all the other considerations addressed in this opinion which weigh against disqualification, I have accorded these affidavits some weight.

▮▮▮▮ Lastly, I have reviewed the case law. Though a motion to disqualify must "depend on the facts of a particular situation or transaction," *Model Rules of Professional Conduct* 1.9 cmt. 2 (1994), the facts of other cases can be helpful. In *Telectronics, supra,* for example, the Court permitted attorneys who had participated in the prosecution of a patent to subsequently challenge the patent's validity. The Court noted that the attorneys could not be disqualified because there was no showing that they had received actual confidences that would have given them and their clients an unfair advantage. The Court observed

that "attorneys represent *clients*—not legal positions." *Telectronics,* 836 F.2d at 1338. The mere "appearance of impropriety" of attorneys arguing both sides of an issue at different times was insufficient to support disqualification. *Id.* at 1338–39.

Based on similar considerations, the court in *Agent Orange Product Liability Litigation, supra.,* permitted attorneys who had participated in the negotiation of a class action settlement to subsequently represent a class of plaintiffs who attacked the settlement. 800 F.2d at 19–20.

Although there are certainly anomalies, cases in which disqualification is ordered tend to have fact patterns in which the potential for harm to the previous client resulting from the subsequent representation is more apparent. The principal First Circuit case cited in this opinion is a good example. In *Kevlik,* plaintiffs in a civil rights action involving police misconduct sought to disqualify the law firm defending the defendant-city. In seeking representation shortly after the incident in question took place, one of the co-plaintiffs consulted with an attorney in the firm and conveyed to this attorney the details of the event, and also paid the firm a retainer. Although the firm subsequently withdrew from the representation so that it could represent the city, the Court held that the firm must be disqualified because of the imputed conflict. The plaintiff had "explained in full detail the events that happened on the night of his arrest," *Kevlik,* 724 F.2d at 849, and the firm's imputed knowledge of these events created a disqualifying conflict.

In *Kevlik,* there was a direct connection between the facts of the former and subsequent representations. The party moving for disqualification identified the specific elements creating the conflict, as well as the prejudice that might result. All three factors are absent in the case currently before the court.

Therefore, based on the foregoing considerations, the Sugar Corporation's motion to disqualify attorney Moreda is **DENIED.**

**IT IS SO ORDERED.**