Maturi v. McLaughlin Research          CV-01-318-M    12/31/01
                     UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Harold J. Maturi and
Henry G. Maturi,
      Plaintiffs

      v.                                    Civil No. 01-318-M
                                            Opinion No. 2001 DNH 230
McLaughlin Research Corp.,
      Defendant


                            **O R D E R**


      Plaintiffs sued their former employer in a whistleblower

action, under 31 U.S.C. § 3730(b) (the False Claims Act) and RIGL

§ 28-50-1, in the United States District Court for the District

of Rhode Island.  Defendant counterclaimed in five counts.  Upon

recusal of the judges of that district, the undersigned was

designated to preside.  Before the court is plaintiffs' Motion to

Disqualify [Defendant's] Counsel (document no. 4).  Defendant

objects, and requests an evidentiary hearing.  The request for an

evidentiary hearing is granted.  However, having reviewed the

pleadings filed, it appears that some guidance as to what the

hearing will address is in order (and, indeed, counsel may

conclude a hearing is unnecessary after all).

## Factual Background[1]

On September 11, 1998, Andra Kelly, defendant's chief executive officer and chairman of its board of directors, discharged plaintiffs from their respective positions of president (Harold) and Rhode Island division manager and executive vice-president (Henry) of the defendant corporation. (Maturi Aff. ¶ 2.) In October of 1998, or thereabouts, Harold Maturi ("Maturi") met with attorney Stephen Reid ("Reid"), a partner in the law firm of Blish & Cavanagh, LLP ("Blish & Cavanagh" or "the firm") to discuss a potential legal claim against defendant. (Maturi Aff. ¶ 3.)

The meeting lasted approximately one hour. (Id.) Maturi claims, in his affidavit, to have disclosed confidential information to Reid and to have given him various relevant documents. (Id. ¶ 11).[2] He also contends that Reid offered a

_____

[1] The only verified facts are those contained in Harold Maturi's affidavit, submitted in support of plaintiffs' motion to disqualify counsel. Defendant has submitted no statement of facts under oath, but does challenge, in its memorandum, some of the factual statements made by Maturi in his affidavit. The facts referenced in this section are presented solely for the purpose of addressing plaintiffs' motion to disqualify counsel prior to hearing, and are not findings of fact.

[2] Defendant concedes that it continues to hold, in "off-site storage," copies of the documents that Maturi brought to his

2

legal opinion regarding his potential claims, and that the two discussed legal strategy. (Id. ¶ 14.) Defendant counters, albeit in a memorandum rather than an affidavit, that Maturi disclosed no "sensitive and proprietary business and financial information" to Reid (Def.'s Obj. at 10), and that Reid offered no legal advice of any sort (Def.'s Obj. at 7). On at least one occasion after the meeting, Maturi and Reid conferred by telephone. (Maturi Aff. ¶ 15.) Finally, defendant concedes that on two occasions after the meeting, Reid discussed plaintiffs' case with Joseph V. Cavanagh, Jr., the managing partner of Blish & Cavanagh. (Def.'s Obj. at 3.)

Plaintiffs eventually retained other counsel to pursue various claims against defendant. On December 17, 1999, approximately fourteen months after Maturi's meeting with Reid, plaintiffs filed this suit. Defendant was initially represented by Richard G. Galli & Associates, Incorporated ("Galli"). Among other things, Galli accepted service and filed defendant's answer and counterclaim. However, Galli withdrew as defendant's counsel on July 15, 2000. Three days earlier, on July 12, Joseph V. Cavanagh, Jr., Raymond A. Marcaccio, and Jeanne M. Scott, all of

meeting with Reid. (Def.'s Obj. at 2 n.4.)

3

Blish & Cavanagh, filed appearances as counsel for defendant. Some ten months later, on May 23, 2001, plaintiffs filed a motion to disqualify Blish & Cavanagh from continuing as counsel for defendant.

On July 17, 2001, Judge Lagueux held a hearing on plaintiffs' motion to disqualify counsel. When defendant insisted upon the need for an evidentiary hearing, Judge Lagueux terminated the proceedings, on grounds that he would be disqualified from presiding over an evidentiary hearing at which he would be obligated to evaluate Reid's credibility as a witness. Because the other judges in the district of Rhode Island would be similarly disqualified, the case was assigned to this district.

## Discussion

Plaintiffs move to disqualify Blish & Cavanagh on grounds that Harold Maturi met with the firm in search of legal representation and shared confidential information with Reid about this very litigation, in which Blish & Cavanagh now appears for the defendant. Defendant contends that: (1) plaintiffs never had an attorney-client relationship with Blish & Cavanagh; (2)

4

Blish & Cavanagh has used no information obtained from plaintiffs to their disadvantage, nor could it do so, given the general nature of the information provided to Reid by Maturi; and (3) defendant would be severely prejudiced by having to retain new counsel at this time.

According to Rule 4(d) of the Local Rules of the United States District Court for the District of Rhode Island, "[t]he rules of Professional Conduct of the Rhode Island Supreme Court shall be the standard of conduct for all attorneys practicing before this court."  Of relevance here is Rule 1.9, which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

R.I. R. Prof. Conduct 1.9.  Application of this rule is straightforward:

5

> In order to determine whether a situation requires attorney disqualification under Rule 1.9, a court needs to determine "(i) whether there is an attorney-client relationship and (ii) if so, whether there is a substantial relationship between the former representation and present relationship."

Ageloff v. Noranda, Inc., 936 F. Supp. 72, 75 (D.R.I. 1996) (interpreting R.I. R. PROF. CONDUCT 1.9) (quoting Polyagro Plasitcs, Inc. v. Cincinnati Milacron, Inc., 903 F. Supp. 253, 256 (D.P.R. 1995)). Finally,

> In ruling upon a motion to disqualify, the court must balance two competing interests: (1) the right of a party to an attorney of his or her choosing, and (2) the protection of the integrity of the judicial process. [Polyagro Plastics, 903 F. Supp. at 256]. Of course, "the moving party bears the burden in a motion to disqualify." Starlight Sugar, Inc. v. Soto, 903 F. Supp. 261, 266 (D.P.R. 1995) (citation omitted).

Howe Inv., Ltd. v. Pérez & Cía. de Puerto Rico, Inc., 96 F. Supp. 2d 106, 109 (D.P.R. 2000) (interpreting the Model Rules of Professional Conduct of the American Bar Association).

Here, obviously, there is a substantial relationship between Maturi's consultation with Blish & Cavanagh and the firm's representation of defendant. After all, Blish & Cavanagh was retained to defend against the identical claims that Maturi

6

discussed with Reid.  The question that remains is whether plaintiffs had an "attorney-client relationship" with Blish & Cavanagh, which is a question of fact.  See DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 766 (R.I. 2000) (citing State v. Austin, 462 A.2d 359, 362 (R.I. 1983)).

Plainly, there was no express agreement between plaintiffs and Blish & Cavanagh that established an attorney-client relationship.  But "[t]he existence of such a relationship . . . need not be proven by express agreement; rather, the conduct of the parties also may establish an attorney-client relationship by implication."  DiLuglio, 755 A.2d at 766 (citing State v. Cline, 405 A.2d 1192, 1199 (R.I. 1979)); see also R.I. Depositors Econ. Protection Corp. v. Hayes, 64 F.3d 22, 27 (1st Cir. 1995) ("The Rhode Island Supreme Court has often stated that an attorney-client relationship . . . may be implied from [the parties'] conduct.").  "And where the advice and assistance of the attorney are sought and received in matters pertinent to the attorney's profession as a lawyer, such a relationship can still arise even in the absence of an express agreement."  DiLuglio, 755 A.2d at 766.

7

Moreover, and perhaps more to the point in this case, "[a] fiduciary relationship in which client confidences must be protected may arise from a 'preliminary consultation by a prospective client with a view to retention of a lawyer, although actual employment does not result.'" Howe, 96 F. Supp. at 110 (quoting Polyagro, 903 F. Supp. at 256).

> "A party may establish an implied attorney-client relationship if (i) the party submitted confidential information to the attorney, and (ii) the party did so with the reasonable belief that his lawyer was acting as the party's attorney." Polyagro, 903 F. Supp. at 256 (citations omitted). For purposes of a motion to disqualify, confidential information "is information that if revealed could put [one party] at a disadvantage or the other party at an advantage." Id. at 258. . . . When the attorney-client relationship is explicit, the court must assume "that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." Kevlik v. Goldstein, 724 F.2d 844, 850 (1st Cir. 1984), quoted in Polyagro, 903 F. Supp. at 256 (internal quotation marks omitted). However, when the former relationship is an implied one, such presumption does not follow, and the court "must inquire into the substance of the information that passed between [the party and the attorney]." Polyagro, 903 F. Supp. at 257.

Howe, 96 F. Supp. 2d at 110. Finally,

> to imply a contract, including one between an attorney and a client, the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing has become his lawyer. Sheinkopf v. Stone, 927 F.2d 1259, 1260 (1st Cir. 1991)

8

> Rather, if such a belief is "to form a foundation for the implication of a relationship of trust and confidence, it must be objectively reasonable under the totality of the circumstances." <u>Id.</u>

<u>R.I. Depositors Econ. Protection Corp.</u>, 64 F.3d at 27 (holding that third-party plaintiff claiming legal malpractice had no attorney-client relationship with attorney representing limited partnership, in which third-party plaintiff was limited partner, when attorney had suggested that third-party plaintiff retain separate counsel).

Plaintiffs here contend that an attorney-client relationship, requiring a duty of loyalty on the part of Blish & Cavanagh, must be inferred from the interaction between Maturi and Reid. In particular, they point to the disclosure of confidential information by Maturi to Reid and to the legal advice they claim Reid gave Maturi. Defendants counter that there was no attorney-client relationship because, <u>inter alia</u>: (1) at the time of his meeting with Reid, Maturi was merely interviewing prospective counsel, and in fact consulted with several other attorneys before deciding who to retain; (2) Reid offered no legal advice, did not assess the strength of plaintiffs' claim, and did not discuss strategy; and (3)

9

plaintiffs did not raise the conflict of interest issue until nearly a year after Blish & Cavanagh entered an appearance as counsel for defendant. Defendant also contends that Maturi disclosed no confidential information to Reid.

On the record before it, the court cannot determine whether an implied attorney-client relationship arose between plaintiffs and Blish & Cavanagh. Because the competing interests affected by disqualification decisions are important ones, see Howe, 96 F. Supp. 2d at 109, and because the existence of an attorney-client relationship is a fact-bound question, see DiLuglio, 755 A.2d at 766, an evidentiary hearing is necessary. The critical evidentiary issue is this: Did Maturi disclose confidential information to Reid?

The parties might find it useful to review the decision in Polyagro Plastics, supra. In addition, defendant should be prepared to provide the court with a complete copy of Blish & Cavanagh's "dummy file" related to its interaction with Maturi, including: (1) all documents provided to Reid by Maturi; (2) any notes that Reid (or anyone else) may have made before, during, or after the meeting with Maturi; (3) any research that Reid (or

10

anyone else) may have conducted subsequent to the meeting with Maturi related to the legal or factual issues raised during that meeting; (4) any internal memoranda pertaining to Reid's meeting with Maturi; and (5) records of any consideration of potential conflicts of interest arising from Blish & Cavanagh's decision to represent defendant in this case. If Maturi did disclose confidential information to Reid, then Blish & Cavanagh is, of course, disqualified.[3] If not, then its continued representation of the defendant may be appropriate.

Finally, the court does not need to hear evidence regarding defendant's argument that it would be prejudiced if it had to retain new counsel at this stage in the litigation. "Resolving questions of conflict of interest is primarily the responsibility

---

[3] While defendant's memorandum of law points out various layers of insulation between Reid and the attorneys handling defendant's case, as well as the passage of time between Reid's meeting with Maturi and Blish & Cavanagh's decision to represent defendant, the Rhode Island Rules of Professional Conduct would prohibit any Blish & Cavanagh attorney from representing defendant if the court were to infer an attorney-client relationship between Maturi and Reid. See R.I. R. PROF. CONDUCT 1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2."). In other words, there is no sort of wall, Chinese or otherwise, that would allow Blish & Cavanagh to represent defendant if Maturi disclosed confidential information to Reid.

of the lawyer undertaking the representation." Comment to R.I. R. PROF. CONDUCT 1.7. Therefore, plaintiffs' failure to move for disqualification immediately upon Blish & Cavanagh's appearance for defendant is irrelevant. If Maturi did not disclose confidential information to Reid, then Blish & Cavanagh is not disqualified from representing defendant. But if Maturi did disclose confidential information to Reid, then Blish & Cavanagh owed both plaintiffs and defendant a duty of inquiry and a duty to consult with plaintiffs and obtain their consent before committing to represent defendant. See R.I. R. PROF. CONDUCT 1.9(a). In short, it was Blish & Cavanagh's duty and responsibility, not plaintiffs' obligation, to identify and resolve conflict of interest questions arising from Maturi's meeting with Reid, on the one hand, and Blish & Cavanagh's later interest in representing defendant, on the other. While defendant's choice of counsel is entitled to respect, see Howe, 96 F. Supp. 2d at 109, the integrity of the judicial process requires defendant's right to counsel of its choice to give way to plaintiffs' right not to litigate against a law firm with whom they shared confidential information.

## Conclusion

The Clerk of Court shall schedule an evidentiary hearing on plaintiffs' motion to disqualify.

**SO ORDERED.**

 

                                           _____
Steven J. McAuliffe
United States District Judge

December 31, 2001

cc:  Robert C. Corrente, Esq.
     Joseph V. Cavanagh, Jr., Esq.
     Clerk, United States District Court
          District of Rhode Island