**SOMASCAN PLAZA, INC.,
et al., Plaintiffs,**

v.

**SIEMENS MEDICAL SYSTEMS,
INC., Defendant.**

Civ. No. 98–2218 (JP).

United States District Court,
D. Puerto Rico.

April 28, 1999.

---

Magda Morales Torres, Law Offices of Benny Frankie Cerezo, Río Piedras, P.R., for plaintiff.

José R. González Irizarry, Pedro E. Muñiz Meléndez, McConnell Valdés, San Juan, P.R., Louis R. Moffa, Jr., Schnader, Harrison, Segal & Lewis, LLP, Cherry Hill, NJ, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

The Court has before it Motion of Plaintiff to Disqualify McConnell Valdés and Louis R. Moffa Jr. as Defendant's Counsel (**docket No. 24**), Defendant's Opposition to Plaintiff's Motion to Disqualify Counsel and Request for Sanctions (**docket No. 28**). Defendant's Motion to Dismiss and for Sanctions Pursuant to Rule 37 of the Federal Rules of Civil Procedure (**docket No. 25**), and Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss and for Sanctions Pursuant to Rule 37 of the Federal Rules of Civil Procedure (**docket No. 32**).[1]

On October 27, 1998, Plaintiffs Somascan Plaza, Inc. ("Somascan Plaza"), Instituto Central de Diagnóstico ("Instituto Central"), and Somascan Inc., all owned by Dr. Frank Kolodziej, filed a Complaint seeking damages for breach of contract against Defendant Siemens Medical Systems, Inc. ("Siemens"). Somascan Plaza alleges that it ordered an MRI and CT unit from Siemens, and that although the CT unit functioned after delivery, the MRI unit never functioned properly and did not meet technical specifications. Siemens de-installed these units in October 1998 for a lack of payment. Plaintiff Somascan Plaza seeks damages totaling $500,-000.00, the amount it paid for the MRI unit, as well as $2,000,000.00 in lost income. Plaintiffs also claim that as a retaliatory measure, Siemens I disconnected the medical units it maintained for the Instituto Central and Somascan, Inc. after the passage of Hurricane Georges. Instituto Central seeks $75,000.00 in lost income, and Somascan, Inc., requests $150,000.00 for lost income resulting from the disconnection.

Defendant Siemens has brought a counterclaim against Plaintiffs for breach of contract. Siemens seeks the difference between the sale price of the units to Somascan Plaza and the resale price, totaling $539,000.00, an additional $90,000.00 for the de-installation of the units, and liquidated damages estimated at $193,000.00. Siemens also alleges that Somascan Plaza was unjustly enriched by using the MRI and CT units for profit without having fully paid for them.

The Court met with the parties on March 15, 1999 for an Initial Scheduling Conference. At the Conference, the Court was informed that Dr. Kolodziej refused to answer questions and terminated his deposition on March 13, 1999. In an Order dated February 24, 1999, the Court had ordered Dr. Kolodziej to appear for a deposition on March 13, 1999 and stated that if he did not appear, he would be sanctioned personally including, but not limited to barring his testimony at trial and in all other proceedings in this case (docket No. 16). Plaintiffs' attorneys insisted that the reason Dr. Kolodziej refused to continue with the deposition was that he and his attorney realized that the law firm representing Defendant, McConnell Valdés, had previously represented Dr. Kolodziej in tax matters concerning his businesses. Based on the questions asked by Defendant's attorney, Plaintiffs assert that it became clear to Dr. Kolodziej's attorney that Defendant's attorney was utilizing privileged information gained from the previous representation as the basis of the deposition questions.

During the ISC, Plaintiffs indicated that they intended to move to disqualify the law firm McConnell Valdés from representing Defendant Siemens because of this conflict of interest. Defendant, on the other hand, insisted that McConnell Valdés had only repre-

---

1.   Defendant has filed a Supplementary Motion to Dismiss and for Sanctions (docket No. 35) which includes additional allegations of sanctionable conduct by Plaintiffs in violation of the Court's Initial Scheduling Conference Order. Defendant includes these allegations as further support for its initial Motion, and specifically, in support of its request for dismissal of the Complaint. The Court, however, cannot address or include the arguments made in the Supplementary Motion without allowing Plaintiffs an opportunity to re-

spond. Plaintiffs' opposition is due on April 30, 1999; however, the deposition of Dr. Frank Kolodziej is set for April 29, 1999, and because of this, the Court cannot wait for Plaintiffs' response to enter this Opinion and Order. Therefore, for the purposes of the instant Opinion and Order, the Court will not consider Defendant's Supplementary Motion. Rather, after receiving Plaintiffs' opposition, the Court will address Defendant's Supplementary Motion in light of both parties' arguments and this Opinion and Order.

sented Somascan Inc. on a limited tax matter several years ago, and that there is no connection between their previous representation and the current case. In addition, Defendant's attorney indicated that it would move for sanctions against Plaintiffs for Dr. Kolodziej's failure to comply with the Court's Order regarding his deposition.

Therefore, the Court ordered the parties to brief these issues, and set deadlines for the filing of the parties' motions and opposition motions. On April 5, 1999, Plaintiffs sought an extension of time to file their opposition to Defendant's Motion for Sanctions because Plaintiffs' law firm was closed down during Holy Week (docket No. 29). The Court denied this Motion because, as discussed at the ISC, the Court needed time to rule on the parties' Motions prior to Dr. Kolodziej's further deposition scheduled for April 29, 1999. Plaintiffs filed their Opposition on April 8, 1999.

## II. Discussion

### A. Plaintiffs' Motion to Disqualify Defendant's Law Firm

Plaintiffs move to disqualify from this case both the law firm of McConnell Valdés and Louis R. Moffa Jr. of Schnader Harrison Segal & Lewis, admitted pro hac vice on March 16, 1999. Plaintiffs assert that during the 1980's, Somascan Inc. sought and retained the legal counsel of McConnell Valdés to assist it in applying for a tax exemption before the Puerto Rico Department of Treasury. Plaintiffs allege that during this representation and other legal representation that followed, McConnell Valdés was privy to sensitive information regarding the financial status and business dealings of Somascan Inc. and the other corporations owned by Dr. Kolodziej, which can be used against Plaintiffs in the present litigation. Plaintiffs indicate that the instant case is substantially related to the previous representation by McConnell Valdés.

Defendant asserts that from April 2 through July 30, 1990, McConnell Valdés advised Somascan, Inc. regarding its application for a tax exemption related to hospital units under Act. No. 168 of June 30, 1968,

P.R.Laws.Ann. tit. 13 § 371. These legal services never culminated in litigation, and further, McConnell Valdés did not prepare or have access to Somascan Inc.'s tax returns or financial data. McConnell Valdés further indicates that it has never rendered any legal advice to any of the Plaintiffs in connection with the present litigation. In addition, McConnell Valdés asserts that the prior representation was remote in time and disconnected with Somascan Inc.'s allegations regarding the disconnection of their medical equipment in September 1998. Finally, McConnell Valdés notes that there was a previous action by Somascan Inc. in local court against Siemens, in which Somascan Inc. was represented by Benny Frankie Cerezo as it is now, and Siemens was represented by McConnell Valdés. There was no question raised during this litigation as to McConnell Valdés' representation of Siemens. Thus, Defendant argues that Plaintiffs have waived their right to object to McConnell Valdés' representation of Siemens.

■ A motion to disqualify an attorney is an accepted and adequate way for a litigant to bring a potential conflict of interest to the court's attention. *See Estrada v. Cabrera,* 632 F.Supp. 1174, 1175 (D.Puerto Rico 1986). Courts, however, should be cautious in analyzing a disqualification motion because they are often used for strategic purposes. *See id.* (citing *Smith v. Whatcott,* 757 F.2d 1098, 1099–1100 (10th Cir.1985); *Ross v. Great Atlantic & Pacific Tea Co., Inc.,* 447 F.Supp. 406, 410 (S.D.N.Y.1978); *Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir.1975); *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1289 (2d Cir.1975)). Further, disqualifying a "party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict." *Id.* (citing *Richmond Hilton Assoc. v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir. 1982)). Thus, courts must balance a client's right to be represented by an attorney of their choice and the integrity of the legal system. *See Kevlik v. Goldstein,* 724 F.2d 844, 850 (1st Cir.1984); *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.,* 903 F.Supp. 253, 256 (D.Puerto Rico 1995).

■ The District Court of Puerto Rico has adopted the Model Rules of Professional Conduct to govern ethical considerations and attorneys' conduct. *See* Local Rule 211.4. Rule 1.9 of the Model Rules of Professional Conduct, dealing with conflicts of interest, states that:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.9(a). Thus, it is not "per se" improper for an attorney or law firm to represent a party who is now adverse to a former client "without a showing by the former client that the matters in the pending suit are 'substantially related' to the matters in which the attorney previously represented to the party." *Estrada,* 632 F.Supp. at 1177. Based on the standard set forth in Rule 1.9(a), a court must first determine whether an attorney-client relationship exists, and if so, then explore whether there is a substantial relationship between the former and current representation.

In the instant case, it is undisputed that Dr. Kolodziej and McConnell Valdés had a previous attorney-client relationship. McConnell Valdés indicates that its relationship with Dr. Kolodziej did not culminate in any litigation, but it does not dispute that it provided legal services regarding Somascan, Inc.'s application for a tax exemption.

The crux of the instant disqualification motion, thus, is whether McConnell Valdés' prior representation of Somascan Inc. and/or Dr. Kolodziej is "substantially related" to the present litigation. The Court first notes that the party moving for disqualification bears the burden of showing a substantial relationship between the former and current representation. *See National Souvenir Center v. Historic Figures, Inc.,* 728 F.2d 503, 517–18 (D.C.Cir.1984); *Estrada,* 632 F.Supp. at 1175.; *INA Underwriters Insurance Company v. Nalibotsky,* 594 F.Supp. 1199, 1207 (E.D.Pa.1984).

The substantial relationship analysis was first utilized by Judge Weinfield in *T.C. Theater Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953). The Model Rules subsequently incorporated the "substantially related" language into Rule 1.9. The First Circuit has recently reaffirmed the use of the substantial relationship formulation in resolving conflict of interest issues. *See Borges v. Our Lady of the Sea Corp.,* 935 F.2d 436, 439 (1st Cir.1991) (citing *Kevlik,* 724 F.2d at 846).

In determining whether two matters are substantially related, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.9 cmt. 2. Some courts have applied the "substantially related" test very stringently, finding a substantial relationship only when the issues involved in the two cases are virtually identical. *See Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978)

Courts within this district, however, have taken a functional approach to the substantially related inquiry. This inquiry directs a court to perform the following analysis:

First, the court reconstructs the scope of the facts involved in the former representation and projects the scope of the facts that will be involved in the second representation. Second, the court assumes that the lawyer obtained confidential client information about all facts within the scope of the former representation. Third, the court determines whether any aspect of the former representation is so similar to any material matter in the latter representation that a lawyer would consider it useful in advancing the interests of the client in the later representation.

*Starlight Sugar, Inc. v. Soto,* 903 F.Supp. 261, 265–66 (D.Puerto Rico 1995) (citing CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 7.4 at 370 (Practitioner's Ed.1986)); *see also Estrada,* 632 F.Supp. at 1176.

Regarding the first step, the Court must reconstruct the scope of the facts involved in McConnell Valdés' representation of Dr. Ko-

lodziej and project the scope of the current representation. In doing so, a court must "focus on the precise nature of the relationship between the present and former representation." *Estrada*, 632 F.Supp. at 1176. Unfortunately, in this case, neither party has provided a clear picture of McConnell Valdés' previous representation of Somascan, Inc. or Dr. Kolodziej. The extent of Plaintiffs' allegations are that in the 1980's McConnell Valdés assisted Somascan Inc. in applying for a tax exemption before the Puerto Rico Treasury Department, and "during the last 10 years, plaintiffs have sporadically consulted with the attorney's [sic] of McConnell Valdés over different legal issues in reference to plaintiff [sic] corporations." (Mot. Pls. To Disqualify McConnell Valdés and Louis R. Moffa Jr. as Def.'s Counsel at 5).

The only additional information provided by Plaintiffs regarding the previous representation is that "Dr. Kolodziej disclosed, among other information, his analysis of the financial status of Somascan Inc. and its valuation, his explanation of the situation he wished to address by retaining a law firm; and the strategic and business considerations that were important to Somascan Inc," and this information "puts the firm in a position to take unfair advantage of Somascan Inc. by using information communicated to them in confidence in a matter adverse to Somascan Inc." (*Id.* at 5–6). Defendants do not provide any additional insight into their representation of Somascan Inc., except to indicate that Somascan Inc. was seeking a tax exemption pursuant to P.R.Laws Ann. tit. 13 § 371, Hospital Facilities, exemptions, during the limited period of April 2 until July 30, 1990. McConnell Valdés, however, denies seeing any of Somascan Inc.'s tax returns or financial data.

In addition, the Court has examined the record, namely the deposition testimony of Dr. Kolodziej, for any further indication of the extent of McConnell Valdés' representation. The deposition transcript of March 13, 1999, however, does not include any information that can assist the Court. The transcript includes arguments made by Benny Frankie Cerezo, Plaintiffs' attorney, and Rossell Barrios, representing Defendant, regarding Mr. Cerezo's decision to discontinue the deposition. The only comments specifically related to McConnell Valdés' representation of Dr. Kolodziej are the following: "I think that McConnell Valdés, on one occasion, represented us," (Dep. of Dr. Kolodziej, statement of Benny Frankie Cerezo, p. 33, line 23); "Dr. Kolodziej and Somascan have been represented in tax matters, tax related matters, and that has given the law firm of McConnell-and other things-knowledge of the inner workings of the offices or the financial structures of Doctor Kolodziej," (*Id.*, statement of Benny Frankie Cerezo, p. 38 lines 10–16).

The Court must first determine the scope of the prior representation in order to compare it to the current representation. The Court finds that it does not have enough information to conclude that McConnell Valdés represented Dr. Kolodziej and Somascan Inc. in anything other than the tax exemption issue previously described. Plaintiffs assert, without any further explanation, that Dr. Kolodziej was represented sporadically by McConnell Valdés regarding his businesses over the last ten years. This general statement is not supported by either Dr. Kolodziej or Mr. Cerezo's affidavit, nor by any further facts in the record or briefs. A party moving for disqualification "must have evidence to buttress his claim of conflict," and thus, without such information, the Court cannot even engage in a rudimentary analysis. *Satellite Fin. Planning v. First Nat'l Bank of Wilmington*, 652 F.Supp. 1281 (D.Del.1987).

■ A party need not disclose the confidences actually communicated to its attorney in support of a motion to disqualify. *See Starlight Sugar*, 903 F.Supp. at 266; *Satellite Financial Planning*, 652 F.Supp. at 1284 (citing *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir.1978)). Nevertheless, it is the moving party's burden to prove a substantial relationship between the prior and current representation, which necessarily includes a description of the prior representation. Further, "only when the moving party delineates with specificity the subject matters, issues, and causes of action presented in the former representation can

the district court determine if the substantial relationship test has been met." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir.1981) rev'd. on other grounds overruled on other grounds, *Gibbs v. Paluk,* 742 F.2d 181 (5th Cir.1984).

Thus, prior to engaging in its substantial relationship analysis, a Court must know at least the substance of and issues involved in the prior representation. Plaintiffs' conclusory allegations regarding the sharing of confidences, without a description of the representation, are not enough to support their burden, since "the mere allegation that confidential information was exchanged in a prior representation will not suffice to create the 'irrebuttable presumption' of shared confidences that is so frequently spoken of in this area of the law." *Starlight Sugar,* 903 F.Supp. at 266. Therefore, since Plaintiffs have not provided any specific information about the nature of McConnell Valdés' representation "over the last ten years", the Court must conclude that McConnell Valdés represented Somascan Inc. only for the purpose of filing a tax exemption with the Puerto Rico Department of the Treasury. The Court will assume that, as according to Plaintiffs, this representation took place in the 1980's.

In reconstructing the scope of the previous representation, the Court will presume that McConnell Valdés was involved in all aspects of the preparation of filing for a tax exemption in the 1980s. McConnell Valdés alleges that they did not see any of Somascan Inc.'s tax returns or financial data; however, the Court finds this assertion perplexing. Dr. Kolodziej alleges that he disclosed a range of financial and business information to McConnell Valdés. Without a further explanation by McConnell Valdés as to why the representation did not include an examination of Somascan Inc.'s financial data, the Court will assume that McConnell Valdés saw the necessary tax documents and financial records to assist it in filing a tax exemption under P.R.Laws Ann. tit. 13 § 371 (1968). The relevant law permits an exemption for income derived from rendering medical-hospital services, real or personal property used to render medical hospital services, taxes on equipment machinery and devices for medical diagnosis and treatment, and other excise and municipal taxes.[2] McConnell Valdés, thus, would surely have filed extensive documentation regarding Somascan Inc.'s income or estimated future income and property.

Next, the Court must project the scope of the current litigation. The present case involves a contract dispute between Somascan Plaza—not Somascan Inc.—and Defendant Siemens regarding the sale of an MRI and CT unit. Somascan Inc. is one of two plaintiffs claiming a loss of income resulting from Siemens' alleged disconnection of their medical systems in retaliation for the problems between Somascan Plaza and Siemens at the center of this litigation. The claim by Somascan Inc, presumably, will involve an exploration of the facts surrounding the alleged disconnection, as well as a determination of the actual income lost by Somascan, Inc. related to the machine maintained by Siemens during the day of the alleged disconnection.

Pursuant to the second step of the Court's analysis, the Court assumes that McConnell Valdés obtained confidential information regarding Somascan Inc.'s tax status and other

---

**2.** The full text of the statute, including the 1995 amendments, is as follows:

Any natural or juridical person, who, upon prior compliance with the formalities of this chapter, engages in the operation of a hospital unit as hereinafter defined, shall be exempted for a period of ten (10) years from the payment of:

(a) Taxes over fifty (50%) of the net income derived from rendering medical-hospital services in a hospital unit.

(b) Taxes on real or personal property, provided said properties are used to render medical-hospital services, they belong to a hospital unit, and are located within the perimeters of the institution whose area, for the purpose of the exemption granted herein, is limited to a total of ten (10) cuerdas. The exemption on the land area in cases of hospital units under section 375(a)(4) of this title is limited to one (1) cuerda.

(c) Commonwealth excise taxes on all kinds of equipment, machinery and devices excluding spare parts and accessories therefor which are expressly designed for the medical diagnosis and treatment of human diseases and introduced by or consigned to the hospital unit.

(d) Licensed, excise taxes and any other type of municipal taxes.

P.R.Laws Ann. tit. 13 § 371 (1995).

related financial matters regarding the exemption claimed in the 1980s. Thus, confidential information including the net income derived from Somascan Inc.'s rendering of medical services in the 1980s, the taxes paid on/value of real property owned by Somascan Inc., taxes paid on any equipment utilized in the diagnosis and treatment of patients by Somascan Inc., as well as excise or municipal taxes may have been disclosed to McConnell Valdés. *See INA Underwriters,* 594 F.Supp. at 1206 (quoting *Realco Services, Inc. v. Holt,* 479 F.Supp. 867, 871–2 (E.D.Pa.1979) ("The lawyer might have acquired the [substantially related] information in issue if (a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship")). The Court assumes, for the purpose of this analysis, that all such information was disclosed in McConnell Valdés' representation.

■ The Court must now carefully examine the confidential information received by McConnell Valdés and the contours of the prior representation in order to determine whether any aspect is so similar to a material matter in the current litigation that it would be useful in advancing Siemens' position. At first glance, there is a superficial resemblance between the information learned by McConnell Valdés through its representation of Somascan Inc. and the instant case. As discussed above, Somascan Inc.'s claim against Siemens will involve a calculation of the damages incurred by Somascan Inc. when Siemens allegedly disconnected the equipment. These damages will include a projection of the income derived from the use of the equipment on the day at issue. Nevertheless, "merely pointing to a superficial resemblance between the present and prior representations will not substitute for ... careful consideration ..." *Duncan,* 646 F.2d at 1029.

Defendant points to various facts that lead the Court to conclude that McConnell Valdés' prior representation is not more than superficially similar to the instant case. First, the

former representation occurred, at a minimum, approximately eight years prior to the events related to Somascan Inc. This fact leads the Court to conclude that any information learned by McConnell Valdés related to Somascan Inc.'s 1980's tax exemption will have little relevance to the specific loss of income at issue in the present case. *See Starlight Sugar,* 903 F.Supp. at 267. ("... the passage of time has inevitably diluted whatever advantage [the attorney's] prior representation .... might have given him here.") Further, knowledge gained by McConnell Valdés related to the income generated in rendering medical services in the 1980's is removed not only by time but in fact from the instant case. The only information relevant to damages in this case is the projected loss of income resulting from one day of disconnected Siemens equipment. The scope of McConnell Valdés' prior representation is far removed from this narrow inquiry.

The Court also notes that even though McConnell Valdés may have attained some knowledge of Somascan Inc.'s general business practices in the 1980s, "knowledge of a former client's financial and business background is not in itself a basis for disqualification if the client's background is not an issue in the later litigation." *United States Football League v. National Football League,* 605 F.Supp. 1448 (S.D.N.Y.1985). Based on the discrete claim brought by Somascan Inc. in the instant case, the Court cannot assume that any information about Somascan Inc.'s business or financial background will be an issue in the instant case. Although the Court must carefully analyze the facts of the previous and current representation in its assessment, it "should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *INA Underwriters,* 594 F.Supp. at 1206.

Therefore, the Court finds that McConnell Valdés' representation of Somascan, Inc. during the 1980's related to filing for a tax exemption is not "substantially related" to Somascan Inc.'s claims in the instant case of a retaliatory disconnecting of medical equip-

ment. Plaintiffs' Motion to disqualify Defendant's attorney's is hereby **DENIED**.

## B. Defendants' Motion for Sanctions Based on Plaintiffs' Motion for Disqualification

In Defendant's opposition motion, they ask the Court to impose sanctions on Plaintiffs for the filing of "frivolous and improper requests for disqualification." Defendant seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court's "inherent equitable authority," and 28 U.S.C. § 1927. Plaintiffs did not file an opposition to Defendant's request for sanctions.

Defendant asserts that pursuant to Rule 11, a party must make a "reasonable inquiry" before filing any type of motion. According to Defendant, this inquiry imposes an affirmative duty to investigate both the facts and the law supporting a motion. Defendant argues that it is "painfully obvious" that Plaintiffs' counsel did not make any factual investigation prior to filing the motion for disqualification. (Opp'n. Pls.' Mot. Disqualify Counsel and Request for Sanctions at 14). In addition, Defendant asserts that the timing of Plaintiffs' motion suggests an improper purpose, and that the motion was, in fact, a "mere pretext to obstruct the instant proceedings." (*Id.* at 15).

■ Rule 11, in part, states as follows: (b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

Fed.R.Civ.P. 11. Under Rule 11(c), a court may impose appropriate sanctions based on a violation of subdivision (b). The main purpose behind Rule 11 "is to deter baseless filings in district court and thus . . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The current Rule 11 imposes on counsel a duty "to investigate their clients' claims before making any filings and to reassess them throughout the litigation."[3] *Kale v. Combined Ins. Co. of America*, 861 F.2d 746 (1st Cir.1988). An inquiry into whether an attorney's filing of a motion violates Rule 11 is an objective one. *See id.; Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05 (1st Cir.1988) (citations omitted).

■ In the instant case, Defendant asserts that there was no factual basis for Plaintiffs' Motion to Disqualify, and thus, Plaintiffs' attorney should be subject to Rule 11 sanctions. Based on an objective inquiry, however, it is clear that there was a factual and legal basis for Plaintiffs' motion. As discussed above, it is undisputed that McConnell Valdés previously represented Plaintiff Somascan Inc. regarding a tax exemption. Defendant asserts that if Plaintiffs' attorney had investigated the facts behind the representation he would have realized that "no significant relationship existed between McConnell Valdés' previous representation

**3.** Rule 11 was substantially revised in 1983 to deal with two main problems: (1) confusion regarding when a pleading should be struck, the standard of conduct that would make an attorney subject to sanctions, and type of sanctions available; and (2) courts' reluctance to impose sanctions and attorneys' slowness in invoking the

rule. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The most recent amendments to the Rule, made in 1993, were designed to remedy problems that arose out of the 1983 revision. *See* Fed.R.Civ.P. 11 advisory committee's note.

... and its current representation." (Opp'n. Pls.' Mot. Disqualify Counsel and Request for Sanctions at 14).

The facts of the instant case and legal standard involved in a disqualification motion, however, counter Defendant's argument. The "substantially related" test, more fully described above, is a fact-specific inquiry which requires the court to closely examine the facts of both the previous and current representation. While the Court denied Plaintiffs' motion to disqualify, this does not necessarily lead to the conclusion that the motion was baseless. *See Kizer v. Children's Learning Center*, 962 F.2d 608 (7th Cir.1992) ("The fact that the district court granted the defendants' motion for summary judgment does not require the district court to also find that the plaintiff filed suit with 'improper motive or inadequate investigation.'") Looking objectively at the facts in the instant case, a reasonable inquiry reveals that Plaintiffs' argument for disqualification was reasonably sound. *See Kale*, 861 F.2d at 759. Although Plaintiffs could have made stronger arguments for their case and provided a more detailed analysis, this simply weakened their motion and did not render it baseless. *See Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 466 (1st Cir.1993). In addition, there were no additional costs imposed on Defendant by Plaintiffs failure to provide additional facts or make stronger arguments. *See id.* at 467.

Defendant further seeks sanctions based on Plaintiffs' attorney's alleged "improper purpose" for filing the Motion to Disqualify. Defendant argues that Plaintiffs' failure to raise their disqualification claims prior to the date of Dr. Kolodziej's deposition strongly suggests an improper motive. The Court first recognizes that, as stated above, motions to disqualify can be used for tactical reasons. *See Estrada v. Cabrera*, 632 F.Supp. 1174, 1175 (D.Puerto Rico 1986) (citations omitted). When a motion is brought after litigation has begun, it is more likely that it is being used for strategic reasons than if the conflict is objected to after the filing of the initial pleadings. *See Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir.1988) quoting *Jackson v. J.C.*

*Penney Co.*, 521 F.Supp. 1032, 1034–35 (N.D.Ga.1981) ("A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed."); *Anchor Packing Co. v. Pro–Seal, Inc.*, 688 F.Supp. 1215, 1222–23 (E.D.Mich.1988) ("It also seems far more possible for tactical consideration to be at issue in such a situation where the litigation has already begun than when the conflict arises out of the Complaint.")

Nevertheless, in the instant case, the disqualification motion was made early in the proceedings. The deposition of Dr. Kolodziej was taken on March 13, 1999, two days prior to the Initial Scheduling Conference. Plaintiffs made their objection to the representation of McConnell Valdés at the deposition and reiterated their objection at the ISC. Although one can infer that Dr. Kolodziej and his attorney, Benny Frankie Cerezo, should have been aware of the potential conflict prior to the deposition, the deposition transcript and facts of the former representation lead the Court to conclude that they may not have remembered the representation until the deposition. First, according to the deposition transcript, Mr. Cerezo stated that he did not remember that McConnell Valdés represented Somascan Inc. until Mr. Barrios began asking questions about Somascan Inc. (Dep. of Dr. Kolodziej at p. 33, lines 19–23.) Mr. Cerezo indicated that because of another case he is working on, he did not have time to prepare Dr. Kolodziej until 15 minutes prior to the deposition, and he admitted he has not put much effort or time into the instant case. (Id. at p. 36, lines 10–15.) Assuming this is true, the Court finds it objectively reasonable that an attorney in Mr. Cerezo's position did not realize the conflict issue prior to the deposition. In addition, the fact that the limited representation of Somascan Inc. by McConnell Valdés occurred in the 1980's or 1990 also leads to the conclusion that it is objectively reasonable that Mr. Cerezo or Dr. Kolodziej did not initially recall the representation. While the Court does not condone Mr. Cerezo's behavior in not sufficiently preparing for the deposition nor putting ample time into the instant

case and subsequently wasting the time of this Court and Defendant, it believes that although his behavior may be negligent, it was not motivated by improper motives. Therefore, Defendant's motion for Rule 11 sanctions is hereby **DENIED.**

■ The Court also **DENIES** Defendant's request for sanctions pursuant to its "inherent powers" and 28 U.S.C. § 1927. Defendant asserts that since Plaintiffs' attorney has acted in bad faith and has "vexatiously and unreasonably" multiplied the proceedings in this case, the Court should impose sanctions. (Opp'n. Pls.' Mot. Disqualify Counsel and Request for Sanctions at 16–17). Sanctions are appropriate under § 1927 when an attorney's conduct "has multiplied the proceedings and, in doing so has been unreasonable and vexatious, in the sense of being harassing or annoying." *See Rodriguez v. Banco Central,* 155 F.R.D. 403, 406 (D.Puerto Rico 1994) (citing *Cruz v. Savage,* 896 F.2d 626, 630 (1st Cir.1990)). As discussed above, the Court does not find that Plaintiffs' attorney acted with an improper motive in bringing the disqualification issue to the Court's attention. A motion for disqualification is a proper way to bring a potential conflict of interest to the Court's attention. *See Estrada,* 632 F.Supp. at 1175. The Court does not find that Plaintiffs' attorney has been unreasonable in pursuing the disqualification, and he has not harassed Defendant with his objections and motion. Thus, the Court will not impose sanctions pursuant to its "inherent equitable powers" or § 1927.

### C. Defendant's Motion for Sanctions pursuant to Federal Rules 16(f), 37, and 41(d)

Defendant brings a separate Motion for sanctions pursuant to Rules 16(f), 37, and 41(b) of the Federal Rules of Civil Procedure, seeking sanctions including but not limited to the dismissal of Plaintiffs' Complaint, the exclusion of Dr. Kolodziej's testimony, costs and attorney's fees incurred in the filing of Defendant's motion, as well as expenses incurred in taking Dr. Kolodziej's deposition on March 13, 1999. Defendant bases its Motion on Dr. Kolodziej's refusal to answer questions at his deposition. According to Defendant, because Dr. Kolodziej violated a Court Order requiring him to appear, sanctions are warranted pursuant to Federal Rule 37. In addition, Defendant argues that Plaintiffs' lack of preparation for the ISC and their late filing of the Answer to Defendant's counter-claim is also sanctionable conduct which should lead to dismissal of their Complaint and the entry of default judgment.

Plaintiffs contend that no sanctions are warranted for any of the above-described actions. First, Plaintiffs argue that Dr. Kolodziej appeared for his deposition in accordance with the Court's Order and in addition, that he was justified in refusing to answer any further questions until the issue of McConnell Valdés' previous representation of Somascan Inc. was resolved by the Court. Regarding their lack of preparation for the ISC, Plaintiffs argue that this does not warrant the severe sanction of dismissal. Similarly, Plaintiffs ask the Court to deny Defendant's motion regarding Plaintiffs failure to timely answer Defendant's counter-claim because entering a default judgment is too severe and goes against the strong policy favoring the resolution of claims on their merits.

■ Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, a party may be sanctioned by the Court for a failure to "obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2). If a court has entered an order compelling discovery and a party has disobeyed this order, the court may impose sanctions including the dismissal of the action and requiring the party who violated the order to pay the reasonable expenses, including attorney's fees, caused by the failure to comply. *See id.; United States Fidelity & Guaranty Co. v. Baker Material Handling Corp.,* 62 F.3d 24, 29 (1st Cir.1995). In assessing appropriate sanctions for a discovery violation, the severe remedy of dismissal of the Complaint can only be entered after a party refuses to comply with a court order. *See United States v. One 1987 BMW 325,* 985 F.2d 655, 660 (1st Cir.1993).

In the instant case, Defendant argues that the Court Order dated February 24, 1999 was violated by Plaintiffs when Dr. Kolodziej

refused to answer questions or continue the deposition. The Court entered an Order setting the date for Dr. Kolodziej's deposition as March 13, 1999 based on a motion by Plaintiffs and a response by Defendant regarding the difficulties they were having in scheduling Dr. Kolodziej's deposition (docket No. 16). The Court stated "[i]f Dr. Kolodziej does not appear for his deposition, he will be sanctioned personally, including but not limited to barring his testimony at trial and in all other proceedings in this case."

The Court first notes that a refusal to answer specific questions at a deposition is distinct from failing to appear for a deposition, which is covered by Federal Rule 37(d). *See R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 15 n. 2 (1st Cir.1991). Dr. Kolodziej complied with the Court order by appearing for his deposition, but he refused to answer questions after realizing that there may have been a conflict of interest relating to Defendant's law firm. When a party refuses to answer specific questions at a deposition, the party seeking the responses can move to compel the deponent's answers pursuant to Federal Rule 37(a)(2). *See id.* As described by the First Circuit in *R.W. Intern Corporation,* "[t]he taxonomy of Rule 37 is progressive. If an order to answer is issued under Rule 37(a), and then disobeyed, Rule 37(b)(2) comes into play, authorizing the trial court to impose further sanctions, including the ultimate sanction of dismissal." *R.W. Intern. Corp.,* 937 F.2d at 15.[4]

█ In the instant case, Defendant argues that Dr. Kolodziej violated the Court's February 24, 1999 Order which warrants sanctions under Rule 37(b)(2). The Court finds the facts in the instant case to be substantially similar to those in the *R.W. Intern. Corporation* case. In *R.W. Intern. Corporation,* the appellees argued that the

district court's Scheduling Order, setting the opposing party's deposition, was the equivalent of a Rule 37(a) order. Thus, appellees asserted that when the opposing party refused to answer specific questions at his deposition, he was subject to Rule 37(b)(2) sanctions. The First Circuit, however, stated that:

> Instead of following the protocol limned in Rule 37, that is adjourning the deposition and seeking an order to compel Ward to respond to the questions and to pay the expenses ancillary thereto, Welch's counsel elected to bypass Rule 37(a) and seek immediate dismissal of the suit. In the circumstances at bar, that was tantamount to a ball player sprinting from second base to home plate without bothering to round, let alone touch, third base. Under such circumstances, the district court's premature resort to Rule 37(b)(2) cannot be upheld.

*R.W. Intern. Corp.,* 937 F.2d at 15. The case at bar is similar in that Defendant seeks Rule 37(b)(2) sanctions pursuant to the Court's scheduling Order without having sought an order to compel Dr. Kolodziej's testimony.

The Court recognizes that the situation at hand is distinct from that in *R.W. Intern Corporation* in that not only did Dr. Kolodziej refuse to answer specific questions, but he refused altogether to continue with the scheduled deposition. Further, Dr. Kolodziej did not object to a certain line of questioning, but rather, objected to any questioning by the law firm of McConnell Valdés. Arguably, Plaintiffs and their attorney could and should have realized the potential conflict of interest problem prior to appearing for the deposition; however, as discussed above, the Court found that Plaintiffs were not acting in bad faith or with an improper motive.[5] Nevertheless, the Court had not

---

**4.** If a court determines when analyzing a motion for a Rule 37(a) order that a party was not "substantially justified" in refusing to answer deposition questions, it can initially award sanctions including "the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees." *R.W. Intern. Corp.,* 937 F.2d at 15 quoting Fed.R.Civ.P. 37(a)(4).

**5.** Defendant points out that at the ISC, the Court stated that it was "unbelievable" that Plaintiffs

and Plaintiffs' counsel did not realize the conflict until the deposition. At the ISC, however, the Court did not have the benefit of Mr. Cerezo's explanation of the events, nor did the Court have access to the deposition transcript/testimony and the specific facts of the prior representation. After learning of all these facts and analyzing the parties' positions, the Court realized that it was reasonable that Plaintiffs did not recall the prior representation until during the deposition.

entered an Order compelling Dr. Kolodziej to answer questions about his businesses and will not construe its initial scheduling Order as the equivalent of a Rule 37(a) order. Therefore, Defendant's Motion for Rule 37 sanctions is hereby **DENIED.**

Defendant also seeks sanctions pursuant to Rule 16(f) for Plaintiffs' failure to comply with the Court's ISC Call. The Court first points out that in its ISC Order, it determined that based on Plaintiffs' lack of preparation at the ISC and failure to comply with the ISC Call and provide a complete ISC Memorandum, Plaintiffs' attorneys were to be sanctioned personally in the amount of $500.00 to be paid to the Clerk of the Court on or before April 16, 1999 (docket No. 31). Defendant, however, argues that the sanction of dismissal of Plaintiffs' Complaint is warranted.

The sanction of dismissal " 'is a harsh sanction,' which runs counter to our 'strong policy favoring the disposition of cases on the merits.' " *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 647 (1990) (quoting *Richman v. General Motors Corp.*, 437 F.2d 196, 199 (1st Cir. 1971); *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712 (1st Cir.1977)). Therefore, the First Circuit has instructed that "such an option should be employed only when a plaintiffs' misconduct has been extreme," which includes "extremely protracted inaction, disobedience of court orders, ignorance of warnings, contumacious conduct..., or some other aggravating circumstance ..." *Id.* (quoting *Cosme Nieves v. Deshler*, 826 F.2d 1, 2, (1st Cir.1987)).

As discussed in the ISC Order and in a later Order granting Plaintiffs' request to reconsider the Court's decision at the ISC to dismiss various claims as a sanction and affirming its decision to sanction Plaintiffs' counsel personally (docket No. 30), the Court found Plaintiffs' lack of preparation at the ISC sanctionable. The Court determined that the sanction of $500.00 was appropriate for Plaintiffs' violation of the ISC Call. The Court is not persuaded by Defendant that the monetary sanction should be replaced or extended to include the extreme sanction of dismissal. Although Plaintiffs' counsel did not heed the Court's ISC Call, this is not the type of extreme conduct that warrants the dismissal of the Complaint. Therefore, Defendant's Motion to dismiss Plaintiffs' Complaint is hereby **DENIED.** The Court, however, notes that Plaintiffs failed to pay the $500.00 sanction by April 16, 1999, and to date, this sanction has not been paid. Therefore, on or before **May 7, 1999,** the Court hereby **ORDERS** Plaintiffs to pay the $500.00 fine and **SHOW CAUSE** as to why they have not complied with the Court's Order for sanctions and why the Court should not levy additional sanctions. If Plaintiffs fail to pay the sanction by May 7, 1999, the Court will dismiss their Complaint. *See Vakalis v. Shawmut Corp.*, 925 F.2d 34, 36–37 (1st Cir.1991).

Finally, Defendant seeks the sanction of default judgment for Plaintiffs' failure to timely answer Defendant's counter-claim. Defendant states that it filed its counter-claim on February 1, 1999, and that the answer to the counter-claim was not filed until March 23, 1999. Plaintiffs assert that the entry of default judgment would go against the strong policy of resolving disputes on their merits and that Defendant was not prejudiced by the delay. The Court agrees. A district court has discretion to allow a party to plead beyond the time allotted by the Federal Rules. *See United States v. Foust Distilling Co.*, 36 F.R.D. 92, (M.D.Pa.1960) citing *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185 (3d Cir.1942). In addition, the First Circuit has emphasized that "actions should ordinarily be resolved on their merits." *Leshore v. County of Worcester*, 945 F.2d 471, 472 (1st cir.1991) (citing *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989)).

The Court believes that it is best to allow the counter-claim brought by Defendant on its merits. Defendant has not indicated how it has been prejudiced by Plaintiffs' failure to file its Answer, and the Court does not see how the delayed filing has, in fact, prejudiced Defendant. Further, the Court notes that the issue of Plaintiffs' Answer was discussed at the ISC and considered in the ISC Order and discovery schedule. Therefore, Defendant's Motion to enter default judgment is hereby **DENIED.**

## III. Conclusion

For the reasons set forth above, Plaintiffs' Motion to disqualify the law firm of McConnell Valdés is hereby **DENIED**. In addition, the Court **DENIES** Defendant's Motion for sanctions pursuant to Federal Rules 11, 16(f), 37(b), or 41(b), and 28 U.S.C. § 1927. Plaintiffs **SHALL** pay the $500.00 fine imposed by this Court in its ISC Order and reaffirmed in its April 6, 1999 Order on or before **May 7, 1999** and show cause as to why they disobeyed the Court's previous Order. If Plaintiffs fail to do so, their Complaint will be dismissed in its entirety.

**SO ORDERED.**