**Richard RAMOS LABOY,
et al., Plaintiffs,**

v.

**Marcelo TRUJILLO PANISSE,
et al., Defendants.**

No. CIV. 02–1033(JP).

United States District Court,
D. Puerto Rico.

June 7, 2002.

fendants' "Motion Submitting Additional Documentary Evidence in Support of Defendants' Request for Disqualification" (docket No. 50); Plaintiff's opposition thereto (docket No. 57); and finally, Defendants' "Motion Submitting Certified Translation" (docket No. 58). Defendants allege that Plaintiffs' counsel, the Law Firm of Aldarondo and López Bras (hereinafter, the "Law Firm"), previously represented the Municipality of Humacao in a similar civil rights litigation. Therefore, Defendants argue this Law Firm should be disqualified from this case. Plaintiffs argue that said representation terminated before the current administration took office, and that all files and documents pertaining to all cases were surrendered to the Municipality before the end of 2000. For the reasons stated herein, Defendants' Motion is **DENIED**.

Plaintiffs in this case are sixteen (16) former employees of the Municipality of Humacao. Defendants are Marcelo Trujillo Panisse, the Mayor of the Municipality of Humacao, who is being sued in both his personal and official capacity, Lorell Delgado, the Municipality's Human Resources Director, who is also being sued in both her personal and official capacity, and the Municipality of Humacao. Plaintiffs allege that when Defendant Marcelo Trujillo Panisse was elected Mayor of the Municipality of Humacao in 2000, having run on the Popular Democratic Party (PDP) ticket, he dismissed and/or did not renew Plaintiffs' employment contracts because of their political affiliation with the New Progressive Party (NPP).

Plaintiffs brought forth this civil rights action seeking declaratory and injunctive relief, back and front pay, and compensatory and punitive damages as a result of Defendants' politically motivated actions in discriminating against them. Plaintiffs claim that Defendants' actions resulted in non-renewal of their positions or depriva-

Eliezer Aldarondo–Ortiz, Pablo Landrau–Pirazzi, San Juan, PR, for Plaintiff.

Jesús R. Rabell–Méndez, Rossello–Rentas & Rabell Méndez, San Juan, PR, Jorge Martínez–Luciano, Law Offices of Pedro Ortiz Alvarez, Ponce, PR, for Defendant.

#### OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

The Court has before it Defendants' "Motion Requesting the Disqualification of Plaintiff's (sic) Counsel" (docket No. 30); Plaintiffs' opposition thereto (docket No. 35), Defendants' Reply to Plaintiffs' opposition (docket No. 41), Plaintiffs' opposition to Defendants' Reply (docket No. 46); De-

tion of functions or in the alternative, placement in unreasonable, inferior working conditions, all of which culminated in their ultimate dismissal. They allege violations of 42 U.S.C. § 1983, and also invoke the Court's supplemental jurisdiction to assert claims under Puerto Rico law.

Defendants now move for the disqualification of Plaintiffs' counsel, the Law Firm of Aldarondo & López Bras, arguing that, under a previous administration, they represented the Municipality of Humacao in the case of *Saldaña Sánchez v. Vega Sosa*, Civil No. 90–1403(PG), a civil rights litigation similar to the case at bar. Defendants argue that Plaintiffs' counsel were privy to confidential information which they could now use against the Municipality in the current case. Plaintiffs' counter-argument is threefold: 1) that they did not litigate said case on the merits; rather, they appeared in said case during the execution of Judgment phase, long after the jury had issued its verdict; 2) that said representation terminated before the current administration took office even though the contract was to run until June 2001, and all files and documents pertaining to all Municipal cases were surrendered to the Municipality before the end of the year 2000; and 3) that since the case was on appeal they so informed the Appellate Court, who granted their motion to withdraw as counsel in January 2001. As a preliminary matter, the Court must stress that it views this motion filed by Defendants with some skepticism, since it is well known that "disqualification motions can be tactical in nature, designed to harass opposing counsel". *See Fiandaca v. Cunningham*, 827 F.2d 825 (1st Cir.1987).

## II. ANALYSIS

### A. *Scope of Plaintiffs' counsels' involvement in the prior case*

■ The Court finds no reason to compel Plaintiffs' counsel to disqualify themselves from this case. Defendants first argue that this Court should apply the "substantially related" test in order to determine whether Plaintiffs' counsel should be disqualified from the case at bar. The Court first notes that the party moving for disqualification bears the burden of showing a substantial relationship between the former and the current representation. *Somascan Plaza, Inc., v. Siemens Medical, Inc.*, 187 F.R.D. 34, 39–40 (D.Puerto Rico 1999) (Pieras, J.); *see also National Souvenir Center v. Historic Figures, Inc.*, 728 F.2d 503, 517–518 (D.C.Cir.1984). Furthermore, it has been clearly established that "only when the moving party delineates with specificity the subject matters, issues and causes of action presented in the former representation can the district court determine if the substantial relationship test has been met." *Somascan Plaza*, 187 F.R.D. at 39–40.

In the case at bar, Defendants' arguments are unavailing. Defendants' vague and conclusory allegations stating, at most, that Defendants represented the Municipality in a previous § 1983 claim, do not clear this hurdle. In essence, they did not allege "the type and nature of the confidences that were exchanged" with enough specificity so as to put the Court in a position to adjudicate its motion. *Starlight Sugar v. Soto*, 903 F.Supp. 261, 266 (D.Puerto Rico 1995). The Court cannot ascertain, for instance, whether the Law Firm knew about the Municipality's hiring practices; whether any personnel decisions of the previous administration were disclosed to the Law Firm; and whether they knew if any discriminatory animus on behalf of those Defendants existed. In other words, it is simply insufficient for Defendants to allege that the previous claim was brought forth for political discrimination under § 1983, and that since the current litigation is as well, Plaintiffs' counsel

should be disqualified. Two separate causes of action brought under the same statute does not a similar case make. Therefore, on this basis alone, the Court concludes that Defendants have not met their burden of proof regarding this matter.

However, in an effort to clarify this matter, the Court has carefully perused the Complaints involving this issue, and concludes that even if the Court were to apply the substantially related test to the case at bar, Defendants' arguments would not prosper. In *Somascan Plaza*, the Court laid out the analysis it must undertake in this type of case.

First, the Court reconstructs the scope of the facts involved in the former representation and projects the scope of the facts that will be involved in the second representation. Second, the Court assumes that the lawyer obtained confidential client information about all the facts within the scope of the former representation. Third, the Court determines whether any aspect of the former representation is so similar to any material matter in the latter representation that the lawyer would consider it useful in advancing the interests of the client in the later representation.

*Somascan Plaza*, 187 F.R.D. at 38.

Before beginning its analysis, the Court addresses Defendants' assertion that the contract was for "professional services to the Municipality of Humacao, which is a government entity whose identity is not contingent to that of the people running its affairs at any given time", and the Court "must not loose (sic) sight that defendant's (sic) concerns are centered around Aldarondo's former representation of the Municipality, not of its officers", since the contract was for services to the Municipality itself. Defendants' *Reply* at 6. The Court disagrees. While Defendants' assertion might be correct in a typical, garden vari-ety civil case, in § 1983 political discrimination cases, the very heart of the plaintiffs' allegations *always* center around the conduct of the people who run the Municipality, in other words, the municipal officers. Therefore, this particular case actually *is* contingent on the people running the municipal affairs. With this standard in mind, the Court now turns to its analysis.

■ Turning to the *Saldaña Sánchez v. Vega Sosa* case, the Court finds the issue of *when* Plaintiff's counsel assumed representation of the Municipality of Humacao in the *Saldaña* case dispositive of the matter. It is evident to the Court that Attorney Aliff, and the Law Firm of Aldarondo & López Bras, first appeared in the *Saldaña* case in *July 1997* (docket No. 147). A jury verdict had been entered in said case on September 23, 1996, almost a full year before (docket No. 123). Therefore, it is clear to the Court that Plaintiffs' counsel did not litigate this case on the merits and only participated in the execution of judgment phase of the case. Therefore, the scope of the facts involved in the Law Firm's previous representation only involved execution of a Judgment, while the scope of the facts in the current case involve § 1983, 1st Amendment, and several claims under Puerto Rico law. Turning now to the second step of the analysis, the Court assumes that confidences were shared with the Law Firm regarding only limited issue of the execution of Judgment. Therefore, allegations of shared confidences regarding the merits of the case itself that are presumed to have been discussed between attorney and client regarding the merits of the case did not exist here. The firm of Aldarondo and López Bras only assumed representation to execute the Judgment, and their representation centered on settlement negotiations after a verdict was rendered. *See* Defen-

dants' *Informative Motion*, docket No. 147, Civil No. 90–1403. This is a far cry from having confidential information about the alleged illegal hiring and dismissal practices of the Municipality by its officials which a jury found to be true.

However, Defendants' allegations do not end there, as they also allege that the Law Firm also represented the Municipality and Mayor Gerena in the case of *Haddock Ramos v. López Gerena*, Civil No. 96–1177(DRD), and that the Law Firm fully litigated that case on the merits. Therefore, the Court now addresses the issue of the substantially related test.

The scope of the facts involved in the representation of the *Haddock* case dealt with, among others, defending against claims brought forth under ADEA, political discrimination under § 1983, equal protection, due process, and several articles of the Puerto Rico Civil Code. More importantly, though, the Court can see that both cases had to do with allegations of discrimination by a past, NPP municipal administration that was comprised of different people, from a different political party than the administration accused of the illegal wrongdoings in the case at bar.

Turning now to the second step, the Court must assume that Plaintiffs' counsel obtained confidential information about the NPP political and public policy agendas within the municipal government of Humacao during the administration of its previous Mayor. That said, then the Court must examine the contours of the prior representation to determine whether any aspect is so similar to the current litigation that it would be useful in advancing Plaintiff's positions.

Defendants' contention is that Plaintiffs' counsel might have been privy to confidential information regarding the Municipality's hiring policies that might be used against the Defendants in the case at bar. However, any case litigated by Plaintiffs'

attorneys for the previous Humacao Mayor only dealt with that specific administration's policies. Therefore, since the two administrations belong to two different political parties, the Court can only conclude that they must also differ in their public policy. Consequently, Defendants' argument of shared public policy confidences can only prosper if they were alleging that the previous administration's public policy was the same as the current administration's public policy.

As is evident from the answer to the Complaint, the exact opposite is alleged— Defendants allege that by discharging the Plaintiffs, the current Mayor was attempting to correct the previous administration's illegal hiring practices. *See Second Amended Answer to the Amended Complaint*, docket No. 60, at 5, and Defendant's *Motion Submitting Certified Translation*, docket No. 58. Therefore, any past municipal policy that Plaintiffs' counsel was privy to has no relevance to current municipal policy, and therefore has no bearing upon this case.

Based on this analysis, the Court concludes that Defendants' argument necessarily fails at the third step. While the statute at issue might be the same, the case certainly differs in that the parties, the causes of action, the political ideologies and the public policy agendas are not the same. Put simply, the scope of the allegations in all three cases deal with different plaintiffs and different defendants from different political parties with different political and public policy agendas, and some rather diverse causes of action. The only information relevant to this cause of action is the intent of the Mayor regarding the dismissal of these 16 Plaintiffs. This is a far cry from the firing or illegal practices of the past Mayor, from a different political party, and with a different public policy agenda.

## B. *Contract for services rendered*

Defendants' next allegation is that Plaintiffs' representation of the Municipality terminated in July 2001, that is to say, six months into the current administration, after Judge Pérez Giménez granted the Law Firm's motion to withdraw from the case. Plaintiffs on the other hand, contend that said representation terminated before the current administration took office even though the contract was to run until June 2001, and all files and documents pertaining to all Municipal cases were surrendered to the Municipality before the end of the year 2000.

It is not a novel concept that a law firm will contract with a municipality to render services to a particular administration it favors. In the same way, when that administration ceases to be in power, it is natural to assume that the firm would cease to represent said municipality. In previous years, the Municipality of Humacao had contracted with the Law Firm of Aldarondo and López Bras to represent them, a NPP administration, on a yearly basis from June of one year through June of the next year. In the time frame at issue, the Municipality contracted with the Law Firm of Aldarondo and López Bras to represent the Municipality in June 2000, and said contract was to expire in June 2001. In the meantime, however, in November 2000, elections were held in Puerto Rico, and a new candidate from the PDP ticket was elected Mayor of Humacao. Therefore, it is only natural that the Law Firm of Aldarondo and López Bras terminated their relationship before the new PDP Mayor took office. In December 2000, the Law Firm delivered the files in their possession to the Municipality and they in turn accepted them and signed for them. *See* attachments to docket No. 35. The Court likewise sees no error in this.

Defendants further allege that there is no proof that the contractual relationship ended in December 2000, since the contract itself was to remain in effect until July 2001. There are three problems with Defendants' reasoning. First, the Law Firm personally handed over all files to Mayor Gerena, *who signed for them personally,* in December 2000. The Court believes it would have indeed been difficult for Plaintiffs' counsel to do any actual work for the Municipality without having possession of the files. Second, Plaintiffs petitioned the First Circuit for permission to withdraw from the case, and said judicial body granted it. Third, the Contract contains a termination clause (Clause Twelve (12)), which indicates that the contract could be terminated by either party with thirty (30) days advance notice, and providing for a special monetary compensation in that event. *See* "Professional Services Contract", attachment to docket No. 49. The Law Firm terminated the contract, personally delivered to the Mayor the files in December 2000, and petitioned the First Circuit to withdraw at that time. Thus, contrary to Defendants' assertions, all evidence points to the fact that the contract, even though it was to last for an additional six months, was in fact terminated by Plaintiffs' counsel, per clause twelve, in December 2000.

Defendants further contend that, according to Clause Thirteen (13) of the contract between the Municipality and the Law Firm, the Law Firm agreed not to represent any party in litigation against the Municipality. *See* Contract, Par. 13. However, a careful reading of the contract belies Defendants' assertions.

Clause Thirteen of the Contract reads:
What has been agreed therein does not limit "THE LEGAL COUNSEL'S" faculty to exercise his attorney's profession freely, of to conduct lawful business as any other businessman, provided that *during the term of effectiveness of this*

*contract* "THE LEGAL COUNSEL" shall not take part in, or assume legal representation in favor of any party to a lawsuit against "THE MUNICIPALITY", or advise, or assist, or assume any representation in judicial or extrajudicial actions in which said party claims or alleges interests adverse to "THE MUNICIPALITY". (Emphasis added.) "Professional Services Contract", at 5.

▓ Under the landmark case of *Chevron v. NRDC*, the Court must give reasonable construction and interpretation to laws, statutes and documents. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Furthermore, under Puerto Rico law, "if the terms of the contract are clear and leave no doubt as to the intentions of its contracting parties, the literal sense of its stipulations shall be observed." 31 P.R. Laws Ann., § 3471. In the case at bar, it is clear to the Court that the clause at issue only applied to the Law Firm during the life of the contract—indeed, that is the only permissible interpretation of this clause, and it leaves no room for interpretation.

Furthermore, it is unreasonable to assume that once a firm has represented a municipal administration belonging to a particular political party, they can never again represent any client in a suit against a municipality, particularly if that municipality is being run by a different administration belonging to a different political party and with a completely different agenda. This reasoning makes even more sense when we realize that Puerto Rico is a very small place, and litigators with § 1983 experience in federal court do not abound. The Court therefore holds the only logical and proper interpretation of this clause is that it prohibits a law firm from representing litigants adverse to the Municipality for the duration of that Law Firm's contract for services to the Municipality. Consequently, Defendants' argument regarding this issue is also unavailing.

C. *Withdrawal from the case*

Turning now to the third issue at hand, Plaintiffs' counsel argues that they effectively withdrew from the case in January 2001 after the Appellate Court granted their motion to withdraw as counsel. It is a well established fact that once a notice of appeal is filed, the district court loses jurisdiction and the case moves up the appellate ladder. An appeal suspends the power of the court below to proceed further in the "cause". *See Hovey v. McDonald*, 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883); *DCPB, Inc. v. City of Lebanon*, 957 F.2d 913 (1st Cir.1992) (Recognizing that the filing of the notices of appeal had served to transfer jurisdiction over the case from the trial court to the court of appeals). Therefore, the Law Firm was correct in asking the First Circuit—the only court with jurisdiction at that moment and who was in fact entertaining the case—whether they could withdraw as counsel. The First Circuit granted their motion in January 2001. The fact that the District Court kept the Law Firm on the docket of the case, and granted their motion to withdraw six months later in August 2001, is irrelevant. Before that point, the District Court would not have had jurisdiction over the case to grant said motion to withdraw.

The Court is convinced, by the evidence it has seen, that the Law Firm of Aldarondo and López Bras correctly asked permission to withdraw from the Court of Appeals in December 2000 and that such permission was in fact granted in January 2001. They then surrendered the files of the cases they had with the Municipality in December 2000. Therefore, Defendants' arguments are in error.

The Court would lastly like to address Defendants' new allegation that Plaintiffs' counsel, as the Municipality's previous counsel, "either recommended this action or failed to advise the former Mayor about its illegality. Either way, the renewal of these appointments made it possible for these plaintiffs to keep working until June 30, 2001, after which they were not renewed and for which they filed the instant suit, of which Aldarondo & López Bras intend to profit". *See Motion Submitting Certified Translation.* However, as opposed to what Defendants might think, this is not the issue in this case. This is a § 1983 civil rights violation that alleges that the current PDP Mayor, willingly and knowingly, discriminated against Plaintiffs, who were open supporters of the NPP. Therefore, the issue in this case is not the manner in which the previous Mayor appointed Plaintiffs or how Plaintiffs came to be in their respective positions, but rather if they were discharged for discriminatory reasons by the current Mayor. Therefore, the Court SHALL NOT consider this argument, nor any documents pertaining to it.

## III. CONCLUSION

For the aforementioned reasons, Defendants' motion is DENIED. The Court concludes that, in the specific limited factual circumstances of this case, there is no conflict of interest.

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**